IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-00189-01-CR-W-DW |
| | ) | |
| LANCE HELLUM, | ) | |
| | ) | |
| Defendant. | ) | |

REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Lance Hellum's Motion to Suppress Evidence. For the reasons set forth below, it is recommended that this motion be denied.

I. INTRODUCTION

On April 24, 2006, a criminal complaint was filed against defendant Lance Hellum. On May 17, 2006, the Grand Jury returned a one count indictment against defendant Hellum. The indictment charges that on April 24, 2006, defendant Hellum knowingly possessed with intent to distribute more than five hundred grams of cocaine.

On July 7, 2006, an evidentiary hearing on the motion to suppress was commenced before the undersigned. Defendant Hellum was represented by Assistant Federal Public Defender Stephen C. Moss. The Government was represented by Assistant United States Attorney Amy B. Marcus. The Government called Detective Alex Lepper of the Kansas City, Missouri Police Department as a witness. Based on issues that arose at that hearing, counsel requested a continuance of the hearing and the hearing was continued to August 17, 2006. On August 17, 2006, defense counsel concluded his cross-examination of Detective Lepper. The Government then called Detective Errol Riggins

of the Kansas City, Missouri Police Department as a witness. Defendant Hellum testified on behalf of the defense. The Government recalled Detective Lepper as a rebuttal witness.

## II. FACTS

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

1. On April 24, 2006, Detectives Alex Lepper and Errol Riggins of the Kansas City, Missouri Police Department, Drug Interdiction Squad, were on duty at the Greyhound Bus Station in Kansas City, Missouri. (Tr. I[1] at 4) The officers were waiting on a bus that originated in Los Angeles, California. (Tr. I at 4) Detective Lepper testified that California is a known source state for narcotics. (Tr. I at 4) Detective Lepper further testified that numerous arrests of body couriers carrying large amounts of narcotics have been made off of this bus. (Tr. I at 4-5) Detective Lepper has found twenty to thirty people on this particular bus line who have been transporting narcotics. (Tr. I at 5) Detective Lepper testified that he has encountered numerous people transporting narcotics in their groin areas and strapped on their torsos and legs. (Tr. I at 5)

2. As an interdiction officer, Detective Lepper testified that he watches passengers as they come off the buses. (Tr. I at 5) He looks for things that would indicate drug courier activity, such as people walking strangely, draped heavy clothing, baggy clothing, restricted movement, and bulges or bundles coming from people's bodies. (Tr. I at 5-6)

3. On April 24, 2006, Detective Lepper's attention was drawn to a particular passenger, later identified as defendant Hellum, who was walking very irregularly. (Tr. I at 6) Detective Lepper testified that Hellum was walking as if he had something between his legs. (Tr. I at 6) Detective Lepper followed Hellum into the bus station. (Tr. I at 7) Detective Lepper testified that he observed Hellum's buttocks area to be irregularly shaped. (Tr. I at 7) Detective Lepper further testified that there were some bulges and that he could actually see the impressions of bundles on Hellum's buttocks area. (Tr. I at 7) Detective Lepper described Hellum's pants to be almost pasted to his buttocks area from sitting on the bus for a long period of time. (Tr. I at 7; Tr. II[2] at 47)

4. Detective Lepper motioned to Detective Errol Riggins to come to him and Lepper

---

[1]"Tr. I" denotes the transcript of the hearing on July 7, 2006.

[2]"Tr. II" denotes the transcript of the continuation of the hearing on August 17, 2006.

2

told Riggins that he had observed someone who appeared to have narcotics in their pants. (Tr. I at 7-8) Detective Lepper described the passenger (defendant Hellum) for Detective Riggins. (Tr. II at 12) Detective Riggins went inside the terminal and located Hellum by the cafeteria area. (Tr. II at 12) Detective Riggins testified that he noticed that Hellum was walking in a Frankenstein-type way, kind of stiff, as if he had something between his legs. (Tr. II at 12) Detective Riggins walked past Hellum to get a better look at his buttocks area and he saw a bulging, irregular shape of Hellum's buttocks area, as if there was something in there. (Tr. II at 13) Detective Riggins responded to where Detective Lepper was standing and told Lepper that it did seem like Hellum had something in his buttocks area. (Tr. II at 13) Based on his prior experience of seeing body carriers, Detective Riggins believed that Hellum was transporting narcotics. (Tr. II at 13)

5. Detective Lepper then observed defendant Hellum sit down very carefully and very slowly on a bench inside the terminal. (Tr. I at 8) Detective Lepper approached Hellum and sat down next to him. (Tr. I at 9) Detective Lepper showed Hellum his police identification and badge and asked if he could speak with Hellum. (Tr. I at 9) Hellum said, "You sure can." (Tr. I at 9) Detective Lepper characterized Hellum as polite and almost cordial. (Tr. I at 9) Detective Lepper asked Hellum if he could see Hellum's bus ticket. (Tr. I at 9) Hellum provided the ticket to Detective Lepper. (Tr. I at 9)

6. The bus ticket was a one-way ticket showing travel from California to St. Louis. (Tr. I at 9) It was purchased with cash on the day of travel. (Tr. I at 9) Detective Lepper testified that through his experience and training, he has discovered that drug couriers often use one-way tickets that are purchased with cash on the day of travel. (Tr. I at 9) The fact that defendant Hellum had a one-way ticket purchased with cash on the day of travel strengthened Detective Lepper's confidence that Hellum was carrying narcotics in his pants. (Tr. I at 10)

7. Detective Lepper asked defendant Hellum for some identification. (Tr. I at 10) Hellum produced a California I.D. card showing his name. (Tr. I at 10) Detective Lepper handed the card back to Hellum. (Tr. I at 10)

8. Detective Lepper then explained to defendant Hellum that he was a narcotics officer looking for passengers who might be transporting anything illegal like narcotics. (Tr. I at 10) Detective Lepper testified that at this point, there was a marked difference in Hellum's behavior. (Tr. I at 10) Hellum began breathing more heavily, looking around more, and moving around; he was no longer calm and cordial as he had been. (Tr. I at 10) Detective Lepper asked Hellum if he could search him and Hellum said no. (Tr. I at 10)

9. Detective Lepper testified that at this point he knew defendant Hellum had narcotics in his pants. (Tr. I at 10) Detective Lepper told Hellum that he could see the bulges

3

in Hellum's pants. (Tr. I at 11)  Detective Lepper asked Hellum, "Are you carrying narcotics in your pants?"  (Tr. I at 11)  Hellum did not answer the question.  (Tr. I at 11)  Detective Lepper advised Hellum that he was going to detain him in order to apply for a search warrant.  (Tr. I at 11)  Hellum was looking around more.  (Tr. I at 11)  Detective Lepper told Hellum to stand up and put his hands behind his back.  (Tr. I at 11-12)  Hellum stood up, but he did not put his hands behind his back.  (Tr. I at 12)  He was still looking around.  (Tr. I at 12)  Detective Lepper thought that Hellum was going to try to run or get away.  (Tr. I at 12)

10. Detective Lepper nodded to Detective Riggins and the officers placed defendant Hellum in custody and put handcuffs on him.  (Tr. I at 12)  The officers escorted Hellum to a back room of the bus station.  (Tr. I at 12)  When Hellum sat down in the room, Detective Lepper advised him that he was under arrest for possession of narcotics.  (Tr. I at 12)  This was the first time in Detective Lepper's experience as an interdiction officer that he had ever just gone ahead a placed someone under arrest based solely on his observations.  (Tr. I at 13)  Detective Lepper testified that he felt he had probable cause to place Hellum under arrest because he had no doubt in his mind that Hellum was carrying narcotics in his pants.  (Tr. I at 13)

11. Defendant Hellum was read his rights.  (Tr. I at 13)   Hellum stated that he understood his rights.  (Tr. I at 14)  Detective Lepper asked Hellum, "What do you have in your pants?"  (Tr. I at 14)  Hellum responded, "Powder cocaine."  (Tr. I at 14)

12. Detective Lepper performed a search of defendant Hellum's person incident to his arrest.  (Tr. I at 14)  Under his slacks, Hellum was wearing a girdle and inside the girdle were several large bundles, i.e. Ziploc bags.  (Tr. I at 14)  Three bags were in Hellum's buttocks area and two bags were in his groin area.  (Tr. I at 19)  Another Ziploc bag containing cocaine was strapped to Hellum's chest.  (Tr. I at 16)  Government's Exhibits 1 through 4 are pictures of the bundles attached to and taken from Hellum's person.  (Tr. I at 14–17)  Subsequent lab testing found the total weight of powder cocaine taken from Hellum to be 3,997 grams.  (Tr. I at 17)  Approximately half of the cocaine, roughly 2.2 kilos or 4.6 pounds, was found on Hellum's buttocks area.  (Tr. I at 17, 22)  Approximately one kilo or 2.2 pounds was found in Hellum's groin area.  (Tr. I at 24)

13. Defendant Hellum testified that he had the bundles attached to his torso and buttocks when he first got on the bus in San Bernardino, California.  (Tr. II at 29)  The bus trip from San Bernardino to Kansas City was approximately 20 to 25 hours.  (Tr. II at 29-30)  Hellum testified that he did not remove the bundles at any point during the trip.  (Tr. II at 38)

14. At the continuation of the hearing on August 17, 2006, defendant Hellum was outfitted in the girdle and clothes that he wore on April 24, 2006.  (Tr. II at 30-31)

4

    Simulated bundles were inserted in the girdle. (Tr. II at 31) Defendant Hellum testified that the size of the bundles was the same, but that the material inserted for the hearing was "a lot chunkier" than the original material. (Tr. II at 31-32) However, Hellum testified that the material simulated for the hearing was "basically the same" as what he was wearing at the time of his arrest. (Tr. II at 31-32) Defendant Hellum put on his jacket and walked for the Court. (Tr. II at 34) The Court notes it was able to observe Hellum's buttocks area, even when he wore his jacket.

15. Defendant Hellum has had previous interactions with law enforcement, including some prior convictions. (Tr. II at 42) Hellum was placed in a diversion program on a charge of possession of a controlled substance in July of 2005. (Tr. II at 43-44) One of the terms of Hellum's probation was that he not use, transport or possess narcotics. (Tr. II at 45) Another of the terms was that Hellum was to submit to a search by any law enforcement officer should that be requested of him. (Tr. II at 45) Hellum agreed with Government counsel that he did not submit to a search when Detective Lepper asked to search his person. (Tr. II at 45)

### III. DISCUSSION

Defendant Hellum seeks to suppress "all evidence and testimony relating to such evidence obtained as a result of his detention and search on April 24, 2006, on the basis that such evidence was obtained in violation of his Fourth Amendment rights." (Motion to Suppress Evidence at 1) Defendant Hellum argues that the police lacked probable cause to conclude that he had committed a crime, so his warrantless arrest violated the Fourth Amendment. (Id. at 2) According to defendant, any evidence obtained as a result of this Fourth Amendment violation must be suppressed. (Id. at 4)

A warrantless arrest is proper if it is supported by probable cause. "Probable cause exists where the facts and circumstances within the arresting officers' knowledge are sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense." United States v. Archer, 840 F.2d 567, 573 (8th Cir.), cert. denied, 488 U.S. 941 (1988)(citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). See also United States v. Tovar-Valdivia, 193 F.3d 1025, 1028 (8th Cir.

1999); United States v. Czeck, 105 F.3d 1235, 1238 (8th Cir. 1997); United States v. Williams, 897 F.2d 1430, 1435 (8th Cir. 1990). The determination of probable cause depends on the cumulative effect of the facts in the totality of the circumstances. See United States v. Morales, 923 F.2d 621, 623 (8th Cir. 1991). While a "bare suspicion" of criminal activity is insufficient to establish probable cause, police are not required to have enough evidence to justify a conviction before making a warrantless arrest. Id. at 624. Further, based on their law enforcement experience, the police may draw reasonable inferences of criminal activity from circumstances which appear innocent to the general public. See United States v. Caves, 890 F.2d 87, 94 (8th Cir. 1989).

Looking at the totality of the circumstances and giving "due weight to the inferences that can be drawn from the [officers'] general experience,"[3] the Court finds that probable cause existed to arrest defendant Hellum. The record in this case establishes that defendant Hellum arrived on a bus that originated in California, a known source state for narcotics. (See Fact Nos. 1 and 3) When he exited the bus, defendant Hellum was walking very irregularly, as if he had something between his legs. (See Fact No. 3, supra) Detective Lepper testified that he observed Hellum's buttocks area to be irregularly shaped and that he could actually see the impressions of bundles on Hellum's buttocks. (See Fact No. 3, supra) Detective Riggins testified that he noticed that Hellum was walking in a Frankenstein-type way, kind of stiff, as if he had something between his legs and that Hellum's buttocks area had a bulging, irregular shape, as if there was something in there. (See Fact No. 4, supra) Defendant Hellum's bus ticket was a one-way ticket purchased with cash on the day of travel. (See Fact No. 6, supra) Detective Lepper testified that through his experience and training, he has discovered that drug couriers often use one-way tickets that are purchased with cash

---

[3] United States v. Wilson, 964 F.2d 807, 809 (8th Cir. 1992).

6

on the day of travel. (See Fact No. 6, supra) After Detective Lepper explained to defendant Hellum that he was a narcotics officer looking for passengers who might be transporting narcotics, Hellum began breathing more heavily, looking around more, and moving around; he was no longer calm and cordial as he had been. (See Fact No. 8, supra) When Detective Lepper asked Hellum if he was carrying narcotics in his pants, Hellum would not answer the question. (See Fact No. 9, supra) Based on their prior experience with body carriers, the detectives believed that Hellum was transporting narcotics. (See Fact Nos. 4, 6 and 9, supra) Given the cumulative effect of the facts and the inferences drawn from the officers' experience, the Court finds that the officers had probable cause to believe that defendant Hellum was committing an offense.[4]

Given the Court's finding that there was no constitutional violation in the arrest of defendant Hellum, defendant's argument that the evidence obtained after his arrest must be suppressed as fruit of the poisonous tree must also be denied. The search of defendant Hellum's person was justified as a search incident to a lawful arrest.

---

[4] This finding is consistent with the conclusion reached by the Eighth Circuit Court of Appeals in United States v. Ilazi, 730 F.2d 1120 (8th Cir. 1984). In Ilazi, the court found:

> Everything the agents learned, from the time Ilazi first aroused their suspicions ... confirmed those suspicions–his odd gait as if concealing something in his boots and in his pants, his quick round trip between Anchorage and West Palm Beach, his nervousness, and his response to Pinjoli's furtive signal. Against this backdrop, the agents noticed an unusual bulge on the inside of Ilazi's boot. When asked, Ilazi refused to explain this bulge. At this point, we think the information sufficient "to warrant a prudent man in believing that [Ilazi] ... was committing an offense." United States v. Matthews, [603 F.2d 48 (8th Cir. 1979), cert. denied, 444 U.S. 1019 (1980).] See United States v. Elsoffer, 671 F.2d 1294, 1299 (11th Cir. 1982)(where the unusual size and shape of a bulge and its abnormal position alone provided probable cause).

730 F.2d at 1127.

## IV. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Hellum's Motion to Suppress Evidence (doc #20).

Counsel are reminded they have ten days in which to file any objections to this Report and Recommendation. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

                                               */s/ Sarah W. Hays*
                                               SARAH W. HAYS
                             UNITED STATES MAGISTRATE JUDGE